UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

RODNEY HOLUM,             )
                           )
      Plaintiff,     )
                           )         Case No.
v.                     )     5:18-cv-35-JMH
                           )
URS FEDERAL SERVICE, INC., )    **MEMORANDUM OPINION**
                           )       **AND ORDER**
      Defendant.     )

\*\*\*

This matter comes before the Court on Defendant URS Federal Services, Inc.'s ("URS") Motion for Summary Judgment. [DE 51]. Having considered the matter fully, and being otherwise sufficiently advised, URS's Motion for Summary Judgment [DE 51] will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The circumstances giving rise to this case are largely undisputed. Plaintiff Rodney Holum ("Holum") was employed by URS for over 20 years, from 1994 until he was terminated in 2017. [DE 55-1]. In 2013, while Holum was working in Utah, he was advised that his position would be eliminated. [DE 51-3]. Shortly thereafter, however, URS converted Holum's termination into a transfer, as he was selected to move from Utah to a project in Kentucky. [DE 51-4].

In the Fall of 2013, Holum moved and began working as a Mechanical Maintenance Supervisor ("Maintenance Supervisor")[1] at the Blue Grass Chemical Agent Pilot Plant in Kentucky. As a Maintenance Supervisor, Holum was tasked with overseeing and working with a team to make repairs and dispose of various chemical materials, including used oil. [DE 52 at 4-5]. Working in a highly toxic environment also required Holum to perform certain duties in a 30-millimeter-thick suit and operate other heavy equipment. [*Id.*].

In early March 2017, some used oil was discovered to have been stored improperly—being stored in a sea van, rather than the Hazmat where it was supposed to be taken. [DE 51-5]. While the exact timeline is unclear, during a brief investigation into the improper storing of the used oil, Holum initially reported that he had no knowledge of it. [*Id.*]. Later, however, Holum admitted that he remembered one of his team members had mentioned storing the oil improperly. [*Id.*]. Around the same time, Holum allegedly told two other employees that his team had been storing the used oil

---

[1] Although to an extent the parties appear to disagree whether Mr. Holum was classified as a Maintenance Supervisor or a Maintenance Supervisor 2, neither party has introduced any evidence to suggest that there is a difference in duties or general qualifications. [*See, e.g.,* DE 51-1 at 3; DE 52 at 5; DE 55-1at 2.]. Nor have the parties made this distinction the basis of any claim or argument. It is worth noting, however, that the "Personnel Action Form" lists Holum's job title as "Facility Maint Tech Supr2." [*See* DE 51-4]. Nevertheless, this distinction does not alter the statement of facts or analysis of this Opinion.

improperly, and later stated that he was wrong and that none of his team knew anything about it. [*Id.*].

During the investigation, Holum was allegedly told that one of his team members had "thrown [Holum] under the bus." [DE 51-6 at 1]. Around March 13, 2017, Holum called at least one of his team members into the office and stated that he "can't stand a rat in the wood pile," and that he didn't like rats. [DE 51-5; DE 51-2 at 17-19]. The employee reported Holum's conversation to URS' Human Resources Department. These comments, along with statements from several other employees eventually led to Holum's termination on April 3, 2017. [DE 51-8]. According to the termination letter, the statements made by Holum were considered threatening, intimidating, and retaliatory, in violation of company policy, particularly given that Holum served in a supervisory capacity. [*Id.*]. The omissions and inconsistent statements made by Holum during the investigation were also cited in consideration of his termination. [*Id.*].

On January 3, 2018 Holum filed suit in Madison County Circuit Court, which was subsequently removed by AECOM (the previous defendant) to this Court. [DE 1]. On May 15, 2019, Holum was given leave to amend his complaint in order to reflect URS as the proper Defendant.

Holum's Second Amended Complaint generally alleges that URS discriminated against him on the basis of his age in violation of

3

KRS 344.040(1)(a), when it terminated his employment. [DE 45 at 5-6, PageID #464-465, ¶¶ 30-37]. Additionally, Holum also brings a promissory estoppel claim against URS, alleging that he detrimentally relied on URS' policy that mandates a verbal first warning, then a written warning prior to being terminated. [DE 45 at 6-7. PageID #465-466, ¶¶ 38-46]. URS avers that Holum was terminated because comments he made were in violation of company policy, and that there is no such policy which Holum could have detrimentally relied on. [DE 51].

On July 12, 2019, URS filed the present Motion for Summary Judgment [DE 51], which shall be discussed further herein.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S.

4

at 252. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pennington,* 553 F.3d at 450 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Pennington v. State Farm Mut. Automobile Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009)

5

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

### III. DISCUSSION

URS moves for summary judgment, asking the Court to dismiss each of Holum's claims. [DE 51]. URS first argues that summary judgment is appropriate because Holum has failed to establish a prima facie case of age discrimination, and even if he had, that he also fails to demonstrate that the reason given for his termination was pretextual. [*Id.*]. Next, URS argues that Holum cannot establish a promissory estoppel claim, so summary judgment should also be granted on it as well. [*Id.*]. The merits of these claims will be discussed in turn.

### A. Holum's Age Discrimination Claim

Holum first alleges age discrimination in violation of the Kentucky Civil Rights Act, KRS § 344.040, which makes it unlawful for an employer to discharge or otherwise discriminate against an individual because that individual is forty years of age or older. *See* KRS 344.040(1); *see also Allen v. Highland Hosp. Corp.*, 545

6

F.3d 387, 393-94 (6th Cir. 2008). Age discrimination claims brought under KCRA have been interpreted by the Kentucky Supreme Court "consistent with the applicable federal anti-discrimination laws." *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).

In the absence of direct evidence of discrimination, Kentucky courts apply the familiar *McDonnell Douglas* burden-shifting framework. *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff must establish a prima facie case of age discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff is successful in establishing a prima facie case of discrimination, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the termination decision. *Id*. Once a nondiscriminatory explanation has been offered, the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination. *Id.* at 804.

Thus, because Holum does not argue that his claim is supported by direct evidence, he must first establish a prima facie case of age discrimination. To establish such a prima facie case, Holum must show: (1) that he is forty years or older; (2) that he was subject to an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by someone outside of the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622-

7

23 (6th Cir. 2009) (internal citation and quotation omitted); *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).

As an initial matter, there is no dispute that the first two criteria for a prima facie case of discrimination have been met. That is, URS acknowledges that Holum was a member of a protected class, as he was over 40 years old at the time of his termination in 2017. [DE 45 at 4]. Additionally, given that "[a]n employer's decision to discharge an employee is a classic example of an adverse employment action," it is undisputed that Holum meets the second criteria. *Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007)(citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 n. 2 (6th Cir. 2007).

URS contends, however, that Holum fails to establish that he was qualified for the position of Maintenance Supervisor. In order meet the qualification prong of a prima facie case, Holum "must demonstrate that he was performing at a level which meets his employer's expectations." *Smith v. Walle Corp.*, 62 F. Supp. 3d 587, 594 (E.D. Ky 2014) (citing *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 662-63 (6th Cir. 2000)). This is "evaluated in light of the plaintiff's employment record prior to the onset of the events that the employer cites as its reason for its decision to terminate the employee." *Walle Corp.*, 62 F. Supp. 3d at 594 (internal citations omitted). When analyzing this prong,

courts "should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003).

URS maintains that Holum could no longer pass the objective qualifications for maintaining his employment and points to the following admission by Holum:

> A. But I believe it was for -- because I'm getting old. **Couldn't pass -- just several things.** There was a spirometry test where you have to -- you know, for wearing a gas mask. You have to breathe through this tube at the clinic and **I wasn't passing them very well.**
>
> Q. Is that where it looks like there's a little Ping-Pong ball in a tube?
>
> A. Could be. There's several of them.
>
> Q. You have to –
>
> A. **You've got to blow until you pass out literally. I did anyway.**

[DE 51-2 at 6] (emphasis added). In support, URS cites to *Highfill v. City of Memphis*, 425 F. App'x. 470 (6th Cir. 2011). In *Highfill*, the Sixth Circuit held that by failing to attain certification, as required by his employment contract, a firefighter "failed to demonstrate possession of the required general skills." *Id.* at 474 (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). URS further argues that Holum's inability to pass tests like the one described in the excerpt of his deposition presents a danger to both Holum and other employees on the job.

9

While it may be true that Holum's inability to pass certain
requirements could present a danger to himself or other employees,
no party has demonstrated what the specific qualifications are for
the position of Maintenance Supervisor at URS. In fact, the
*Highfill* holding was based on evidence of an employment contract
and job description which expressly stated that employees must
pass a certification test within a certain amount of time. *See id.*
at 471, 474. Unlike the circumstances in *Highfill*, however, there
is no such evidence here to definitively establish which, if any,
exams were required as part of Holum's employment with URS, and
the results thereof.

Holum points to his employment history with URS as evidence
that he met his employer's expectations. Holum maintains that in
his twenty-year history with URS he has performed at a sufficient
level. In Holum's performance evaluation from December 31, 2016,
just three months prior to his termination, URS' facility manager
commended Holum for an "excellent performance with zero safety or
environmental incidents," and that he had "done a good job of
fostering his team." [DE 15-8 at 2]. Given Holum's twenty-year
career with URS, and positive performance evaluations prior to
termination, there is at least sufficient evidence to create a
genuine issue of material fact on the qualifications prong.

As to the fourth element of the *McDonnell Douglas* test, URS
argues that Holum cannot demonstrate that he was replaced by a

10

younger individual. [DE 51]. To be sure, Holum's Complaint never alleges that he was replaced, nor does Holum dispute this point in his Response. [DE 45; DE 52]. Holum instead contends that the U.S. Supreme Court has created an alternative "lost out" element, and that he meets this element because he lost out on various job advancement opportunities due to his age. Holum relies on an interpretation of *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996), that states that "[t]he fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has *lost out because of his age*." *Id.* at 312 (emphasis added). However, Holum cites no case law to support this application of *O'Connor*. In fact, the Supreme Court in *O'Connor* was actually discussing the difference between class-based and age-based discrimination, modifying the fourth element in age discrimination cases to require replacement by a "significantly younger person," rather than a person outside of the "protected class." 517 U.S. at 312-313.

Notwithstanding, Holum further contends that other comparable employees were treated better and given various opportunities that were denied to him. [DE 52 at 5-6]. Under a disparate treatment theory of discrimination, the fourth prong of *McDonnell Douglas* requires a plaintiff to establish that they were treated less favorably than a similarly situated individual outside his protected class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.

11

1992). Generally, however, in the context of a non-workforce reduction termination, age discrimination claims rely on "replacement" for the fourth prong of *McDonnell Douglas*. *See Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957-959 (6th Cir. 2014). Nevertheless, Holum offers no specific evidence of other similarly situated employees being treated more favorably, beyond mere general statements and allegations of being excluded. [*See* DE 52 at 6].

One statement which Holum points to is a comment allegedly directed towards him saying that he was "not a spring chicken anymore." [DE 52 at 6]. However, the only evidence offered is his own deposition, where Holum stated that he couldn't remember whether the person saying it, whom was apparently around 5 years younger than Holum, said "*we* aren't spring chickens," or "*you* aren't a spring chicken." [DE 51-2 at 7-8, PageID #510-511] (emphasis added). Additionally, Holum also stated in his deposition that he believed the comment was made after he had stretched a muscle. [*Id.* at 8, PageID #511]. But as aforementioned, Holum offers no additional affidavits or evidence to support that the statement was made, when it was made, why it was made, or any other context to suggest that it is sufficiently probative of discriminatory or unfavorable treatment.

Ultimately, conclusory allegations and subjective beliefs are insufficient to establish a claim of discrimination as a matter of

law. *Mitchell*, 964 F.2d at 584-585. As such, without sufficient evidence to support his claim, Holum's bare allegations contending that he was treated less favorably are not enough to withstand summary judgment. *Wad v. Amazon.com Services, Inc.*, No. 18-97-DLB-CJS, 2020 WL 1066985 at *7 (E.D. Ky. March 4, 2020). Because Holum fails to produce evidence that he was replaced by or treated less favorably than a significantly younger person, summary judgment is warranted. *See, e.g., Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010)(granting summary judgment when a party fails to establish they were replaced by someone outside of his protected class); *Williams v. Graphic Packaging International, Inc.*, 790 F. App'x 745, 750 (6th Cir. 2019) ("Where the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' the moving party is entitled to summary judgment as a matter of law.").

Even assuming Holum could establish a prima facie case of age discrimination, URS has met its burden of articulating a legitimate and nondiscriminatory reason for the termination. URS offers as its legitimate, nondiscriminatory reason that Holum's termination was the result of a workplace anti-retaliation violation. [DE 51-1]. This explanation is grounded in the termination letter that Holum received from URS on April 3, 2017, after an investigation

into his comments had concluded. [DE 51-8]. Moreover, the Sixth Circuit has repeatedly held that a violation of company policies is a legitimate, non-discriminatory reason for terminating an employee. *See, e.g., Graphic Packaging International, Inc.*, 790 F. App'x at 751. Thus, the burden shifts back to Holum to come forward with evidence showing that URS' articulated reason was pretextual.

In order to establish that the proffered reason was a pretext for discrimination, Holum must produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation." *Blizzard*, 698 F.3d at 285 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). This can be accomplished by proving either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate his discharge; or (3) that they were insufficient to motivate discharge." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Holum apparently attempts to challenge URS' proffered reason through the second and third avenues. First, Holum argues that the purported reason did not actually motivate URS' decision to terminate him. He reasons that URS could not have fired him for violating the company non-retaliation policy because his conduct did not fall under Kentucky's anti-retaliation statute, KRS 344.280. [DE 52-8]. This argument is misguided. Neither URS, nor

14

the termination letter that Holum received have accused Holum of violating any statutes. [*See* DE 51-8]. Nor is there any evidence in the record to suggest that URS' company policies are contingent on any anti-retaliation statutes. Even so, disputes about the interpretation of company policies do not create genuine issues of material fact regarding pretext. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558-559 (6th Cir. 2009). Moreover, Holum fails to offer any evidence on which his claim is based or point to any cases to support this argument. Undoubtedly, the two are distinct— one may violate a company policy or code of ethics without also violating state laws.

Holum next claims that he was fired due to his seniority so that URS could hire a younger replacement at a cheaper cost. He reasons that URS was struggling financially prior to his termination, and by terminating Holum, URS would save money. However, this argument undercuts Holum's age discrimination claim. The Sixth Circuit has repeatedly held that age discrimination laws prohibit "actions actually motivated by age and [do] not constrain an employer who acts on the basis of other factors—pension status, seniority, wage rate—that are empirically correlated with age." *Allen v. Diebold*, 33 F.3d 674, 676 (6th Cir. 1994) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)). Further, "plaintiffs must allege that [defendant] discriminated against them because they were old, not because they were expensive." *Allen*, 33 F.3d at

677. Consequently, even if it were true that URS sought to save money by terminating him, they are "entitled to make financially self-serving decisions which incidentally harm employees who happen to be in a protected class[]." *Woods v. Kentucky West Virginia Gas Co.*, No. Civ.A. 70458-DCR, 2005 WL 1657089 at *4 (E.D. Ky. July 14, 2005).

Finally, Holum contends that URS' proffered reason was insufficient to terminate him. Although Holum acknowledged using the term "rat," he argues that using such a term is insufficient to justify terminating him because "profanities of a much higher degree were used regularly by younger employees," and that his punishment was disproportionate. [DE 52 at 9]. Holum states that there were "numerous times that he caught younger employees fighting loudly and profanely in the workplace." [*Id.*]. But as noted, Holum fails to provide any evidence to support this claim. Not only does Holum fail to identify any similarly situated employees, he also fails to point to any disparate disciplinary outcomes involving similar circumstances. By failing to provide appropriate comparators to demonstrate that similarly situated employees received more favorable treatment, Holum's discrimination claim fails as a matter of law. *See, e.g., Kinch v. Pinnacle Foods Group, LLC*, 758 F. App'x 473, 479 (6th Cir. 2018).

Ultimately, URS reasons that it had an honest belief in its basis for terminating Holum, an argument which Holum does not

16

respond to. [*See* DE 51-1 at 11; DE 55 at 8]. The Sixth Circuit has held that a "proffered reason for termination can be overturned upon a showing that the employer lacked an honest belief that the employee was guilty of the alleged violations." *Handlon v. Rite Aid Services, LLC*, 513 F. App'x 523, 528 (6th Cir. 2013). Put another way, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately show to be incorrect." *Sybrandt*, 560 F. at 559 (quoting *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). The key inquiry regarding URS' honest belief is not whether Holum's conduct should have resulted in termination, but rather: "whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 598-599 (6th Cir. 2007).

Holum's testimony and pleadings confirm several important factors in URS' decision to terminate his employment: (1) that Holum used the term "rat" towards a subordinate [*See* DE 51-2 at 19, PageID #522; DE 52 at 7-8]; (2) that it was inappropriate [DE 51-2 at 19, PageID #522]; (3) that the information Holum provided during the investigation was inconsistent [*Id.* at 19-20, PageID #522-523]; and (4) that URS' company policy allowed for immediate termination based on the severity of the situation [*Id.* at 22,

17

PageID #525 ; DE 51-10]. [*See* DE 51-8]. Although Holum disagrees that he ought to have been terminated, he has offered no evidence to suggest that URS did not honestly believe his conduct was serious enough for termination. Accordingly, the Court concludes that there is no dispute of material facts regarding whether URS honestly believed its basis for terminating Holum. *See Handlon*, 513 F. App'x at 527-528.

In sum, the evidence presented, even when read in the light most favorable to the non-movant, establishes that URS had a non-pretextual and legitimate business reason for terminating Holum's employment, a basis in which it had an honest belief. Thus, Holum's age discrimination claim fails, and URS is entitled to summary judgment.

## B. Promissory Estoppel Claim

In addition to age discrimination, Holum also asserts a promissory estoppel claim. In Kentucky, the doctrine of promissory estoppel requires: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the promise; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Jeffery v. Medical Protective Company*, No. 3:19-CV-00023-GFVT, 2020 WL 1236305 at *4 (E.D. Ky. March 13, 2020); *see also Ashland, Inc. v. Oppenheimer & Co., Inc.,* 648 F.3d 461, 472 (6th Cir. 2011); *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009).

18

In order to survive summary judgment, Holum must demonstrate a genuine issue regarding two material facts: "(1) that he reasonably relied, in good faith, upon the conduct or statements of [URS], and (2) that he materially changed his position in reliance on the statements." *Vogel v. E.D. Bullard Co.*, 597 F. App'x 817, 826 (6th Cir. 2014)(citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W. 3d 636, 642 (Ky. App. 2003). If there is no such evidence of a promise or reliance that could be expected or justified, then promissory estoppel is inappropriate. *See FS Invs., Inc. v. Asset Guar. Ins. Co.*, 196 F. Supp.2d 491, 507 (E.D. Ky. 2002); *McCarthy v. Louisville Cartage Co.*, 796 S.W. 2d 10, 12-13 (Ky. Ct. App. 1990)(citing *Lynch v. Dawson Collieries, Inc.*, 485 S.W. 2d 494, 496 (Ky. 1972)).

Holum's complaint alleges that he detrimentally relied on a progressive discipline system laid out in the employee handbook, which URS violated by terminating his employment without first giving him a verbal or written warning. [DE 45 at 6-7, PageID# 465-466 ¶¶ 38-46]. On summary judgment, URS, argues that Holum's promissory estoppel claim is inviable because Holum cannot establish that URS ever made any promise not to terminate him without a "three strikes" approach to progressive discipline, much less that he reasonably relied on any such promise. [DE 51-1 at 12-15]. The Court agrees.

Under Kentucky law, an at-will employment relationship is presumed, unless otherwise agreed by the parties. *McDonald v. Webasto Roof Systems, Inc.*, 570 F. App'x 474, 477 (6th Cir. 2014)(citing *Noel v. Elk Brand Mfg. Co.*, 53 S.W. 3d 95, 98 (Ky. Ct. App. 2000)). Except where prohibited by law, an at-will employee may be discharged for good cause or no cause at all. *Id.* (citing *Firestone Textile Co. Div. v. Meadows*, 666 S.W. 2d 730, 731 (Ky. 1983)). Here, Holum has not identified any express statement to suggest that his employment relationship with URS would have been altered. In fact, the URS-AECOM employee handbook specifically states that their employees are at-will. [*See* DE 51-12]. As such, Holum cannot assert a promissory estoppel claim again URS. *See McDonald*, 570 F. App'x at 477; *Jackson v. JB Hunt Transp., Inc.*, 384 S.W. 3d 177 (Ky. Ct. App. 2012)(holding that an at-will employee has no employment security to begin with, and therefore cannot give up any such employment security in reliance on the employer).

Even if Holum were not at-will, he has still not pointed to any evidence or express statement laying out a mandatory three-strikes progressive discipline system on which he could have reasonably relied. As URS points out, the same employee handbook on which Holum apparently relies for his claim states:

> The Company reserves the right to determine the appropriate
> corrective action to take based on the circumstances of a
> given situation and is not obligated to apply the elements in

> any particular order. When deemed appropriate, the Company
> may move directly to termination of employment based on the
> severity of the performance issues or violation of policy.

[DE 51-10]. After reading this excerpt at his deposition, Holum
stated that he was not aware of anyone or anything that said
otherwise. [De 51-2 at 26, PageID# 529]. Finally, URS introduced
the testimony of Hayward Rhodes, a maintenance superintendent at
the same facility as Holum, who stated that supervisors and
superintendents are held to a higher standard, and that their
misconduct can lead directly to firing depending on the
circumstances. [DE 58-1 at 6-7, PageID# 650-651].

In his Response, [DE 52], Holum fails to directly respond to
the evidence presented or arguments made by URS on this issue.
Instead, Holum asserts that he reasonably relied on terms and
language colloquially used at URS in making the statements that
led to his termination, and that it is unjust to be terminated for
using such language. [*Id.* at 10-11]. Holum also repeats his
contention, nearly word for word, that "on a daily basis,
profanities of a much higher degree were used regularly by many
employees," and that on "numerous times [] he had caught employees
[] fighting loudly and using profane language in the workplace."
[*Id.* at 11]. However, Holum fails to support these allegations
with any evidence, or connect them with the elements of a
promissory estoppel claim. Moreover, even if true, Holum fails to

sufficiently highlight how those situations compare to the reasons given for his termination.

As noted, Holum has not identified any express statement between he and URS that would alter the at-will nature of his employment. Nor has Holum cited any case law addressing the issue of whether promissory estoppel has been applied in a similar manner such as here. In light of this and in the absence of any contrary authority, the Court finds that Holum's claim fails. *See Dorger v. Allstate Ins. Co.*, No. 2:08-56-DCR, 2009 WL 1248989 at *8 (E.D. Ky. May 1, 2009). Therefore, URS is entitled to summary judgment on Holum's promissory estoppel claim.

### IV. CONCLUSION

For all the reasons set forth above, each of Holum's claims fail as a matter of law and shall be dismissed. Accordingly, **IT IS ORDERED** as follows:

(1)  URS's Motion for Summary Judgment [DE 51] is **GRANTED;**

(2)  This matter is **DISMISSED WITH PREJUDICE;** and

(3)  This is a final and appealable order.

This the 15th day of April, 2020.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge